IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              :
MICHAEL PASCARELLA on behalf  :     HON. JEROME B. SIMANDLE
of himself and all others     :
similarly situated,           :     Civil No. 09-1921 (JBS/JS)
                              :
              Plaintiff,      :
                              :
      v.                      :             OPINION
                              :
                              :
SWIFT TRANSPORTATION COMPANY, :
INC., et al.,                 :
                              :
              Defendants.     :
```

APPEARANCES:

Philip Stephen Fuoco, Esq.
Joseph A. Osefchen, Esq.
THE LAW FIRM OF PHILIP STEPHEN FUOCO
24 Wilkins Place
Haddonfield, NJ 08033
      Attorney for Plaintiff Michael Pascarella

Anne Milgram
Attorney General of New Jersey
By:  Elaine C. Schwartz
      Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL
Richard J. Hughes Justice Complex, CN 114
Trenton, NJ 08625
      Attorney for Defendants Sharon Harrington, Chief
      Administrator of the New Jersey Motor Vehicle Commission and
      David Mitchell, Commissioner of the Tennessee Department of
      Safety

Lawrence Henry Pockers, Esq.
DUANE MORRIS
30 South 17th Street
Philadelphia, PA 19103-4196
      Attorney for Defendant Swift Transportation Company, Inc.

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

        This matter is presently before the Court on Defendant

Sharon Harrington's motion to dismiss Plaintiff's due process

claim for lack of subject matter jurisdiction, as barred by the Eleventh Amendment, and for failure to allege a constitutional deprivation [Docket Item 13].  Plaintiff Michael Pascarella ("Plaintiff"), on behalf of himself and a putative class of former students of the Swift Driving Academy in Tennessee ("Defendant Swift") who received Commercial Drivers' Licences ("CDLs") in New Jersey, has brought suit against Defendants Swift, Sharon Harrington, Chief Administrator of the New Jersey Motor Vehicle Commission ("Defendant Harrington"), and David Mitchell, Commissioner of the Tennessee Department of Safety ("Defendant Mitchell").  Against Defendant Harrington, Plaintiff asserts that Harrington deprived him and the putative class of their recognized property right in their CDLs without sufficient notice or a hearing, thereby depriving them of due process required by the Fourteenth Amendment.  Plaintiff brings his claims pursuant to 42 U.S.C. § 1983 and seeks only injunctive ("to enjoin the threatened revocation of . . . New Jersey CDLs") and declaratory relief against Defendant Harrington.  Plaintiff maintains that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

The principal issue to be determined is whether the State of New Jersey, when proposing to revoke a driver's license, must give specific notice of the right to a pre-deprivation hearing, or whether due process is satisfied by the published availability

2

of procedures for a pre-deprivation hearing in the New Jersey Administrative Code.  Resolution of the issue in this case requires the Court to apply the Supreme Court's precedent in <u>City of West Covina v. Perkins</u>, 525 U.S. 234 (1999), which held that due process requirements of notice of the right to available remedies is satisfied by publishing administrative review procedures in generally available statutes and regulations.

For the reasons discussed below, the Court will grant Defendant Harrington's motion to dismiss for failure to state a constitutional due process claim without prejudice to Plaintiff pursuing any available State remedies.  The Court finds that it does have subject matter jurisdiction over Plaintiff's claim and that the Eleventh Amendment does not bar the relief sought, but that because Plaintiff failed to request the pre-deprivation review that is available under New Jersey law, he cannot state a claim for denial of due process.

## II.  BACKGROUND

### A.    Factual Allegations in Amended Complaint[1]

Between May 1, 2005 and January 31, 2008, Defendant Swift operated the Swift Driving Academy, during which period Swift was authorized by the Tennessee Department of Safety to administer the necessary official test to receive a Class A Commercial

---

[1] The factual allegations in Plaintiff's Amended Complaint are lengthy and the Court will focus on those relevant to Plaintiff's claims against Defendant Harrington.

Driver's License ("CDL"), and to issue binding CDL test results
and test certifications in the name of the State of Tennessee.
(Am. Compl. ¶¶ 34, 39-41.)  Defendant Swift administered a CDL
test and issued official CDL test results to Plaintiff, a New
Jersey resident, and all putative class members sometime between
May 1, 2005 and January 31, 2009.  (Am. Compl. ¶¶ 8-9, 44-45.)
Plaintiff, along with proposed New Jersey class members, held a
CDL in New Jersey, received based on the CDL test results issued
by Swift.  (Id. ¶ 10, 45.)  Federal regulations permitted
Plaintiff and proposed New Jersey class members[2] to transfer
their original CDLs from Tennessee to New Jersey, based on the
CDL test results from Swift.  (Id. ¶¶ 46-48.)

In February, 2008, federal agents raided Swift's offices in
Memphis, Tennessee and Millington, Tennessee, but to date, no
criminal charges have been filed against Defendant Swift.  (Id.
¶¶ 51-53.)  In or after December, 2008, Defendant Mitchell sent
written notice to the CDL program administrators in every state
where former Swift students held CDLs, including New Jersey,
stating that he believed the Swift CDL tests administered between
May 1, 2005 and January 31, 2008 failed to comply with the rules
and regulations governing Tennessee CDL tests, including chapter
1340-1-13-.22 of the rules of the Tennessee Department of Safety

---

[2] Plaintiff also asserts claims on behalf of class members
who hold CDLs from other states, but these claims are not
asserted against Defendant Harrington.

4

Driver Services Division and 49 C.F.R. § 383.75(a)(2)(iii).[3]
(<u>Id.</u> ¶ 54.)

　　To date, Defendant Mitchell has not informed the CDL program
administrators in other states, the general public, or the
affected truck drivers what specifically is alleged to have been
improper about the Swift CDL testing.  (<u>Id.</u> ¶¶ 55-56.)  Defendant
Harrington does not know what aspects of the Swift CDL testing
were allegedly improper.  (<u>Id.</u> ¶ 76.)

　　In December, 2008, Defendant Harrington received a letter
from Defendant Mitchell stating that the Swift CDL testing was
not conducted in accordance with Tennessee rules and/or federal
regulations.  (<u>Id.</u> ¶ 68.)  At some point after December 1, 2008,
Defendant Harrington began sending form notices to all New Jersey
putative class members substantially similar to the notice mailed
to Plaintiff on March 27, 2009, stating that their New Jersey

---

[3] 42 C.F.R. § 383.75(a)(2)(iii) provides:

> A State may authorize a person (including another
> State, an employer, a private driver training
> facility or other private institution, or a
> department, agency or instrumentality of a local
> government) to administer the skills tests as
> specified in Subparts G and H of this part, if the
> following conditions are met:
> . . .
> (2) The third party as an agreement with the State
> containing, at a minimum, provisions that:
> . . .
> (iii) Require that all third party examiners meet
> the same qualification and training standards as
> State examiners, to the extent necessary to conduct
> skills tests in compliance with Subparts G and H.

CDLs would be revoked in 30 days based on allegations that the CDL tests were improper and that to keep their CDLs members would have to take a new CDL test and pay the necessary fees. (Id. ¶¶ 69-72, 80-82.)  The form notice further informed New Jersey class members that their New Jersey CDL would be revoked if they failed to appear, with a truck, for a CDL test at a specific time, date and place selected by Defendant Harrington. (Id. ¶ 72.)  The letter to Plaintiff, dated March 27, 2009, reads in relevant part:

> It has been brought to our attention by the State of Tennessee that you obtained your previous Tennessee Commercial Driver's License (CDL) based on testing with a third party testing company in Tennessee between May 2005 and January 2008.  The Tennessee Department of Safety has information indicating that this third party testing company did not administer the tests in accordance with Federal Regulations and standards set by the State of Tennessee.  As a result, the third party agreement has been revoked by the State of Tennessee.
> Our records indicate that you have since transferred your Tennessee CDL to a New Jersey CDL.  Based upon the information reported to the MVC as noted above, the MVC has determined that in order to maintain your current New Jersey CDL, it is necessary that you retake your CDL tests.  This includes vision, knowledge and skills/road tests.  You will have to first obtain a CDL learner's instructional permit to complete the process.  The fee for this permit is $35.00.  When you appear at the scheduled time and location listed below, you must have with you: (1) your six points of identification (enclosed is the six point ID Brochure for your review); and (2) the appropriate commercial motor vehicle in which you intend to take the skills test.
> Please be advised that failure to appear for your scheduled retest will result in the suspension of

> your CDL.  Please also be advised that if you fail
> to successfully complete any portion of the CDL
> retest, you will no longer be eligible to operate a
> commercial  motor  vehicle.    Therefore  it  is
> recommended you arrive for your retest accompanied
> by a CDL holder licensed to drive the type of
> vehicle you are testing with.
> If you have any questions or need any additional
> information, please call our Re-Exam Unit at 609-
> 292-6500 ex 5030 and someone will be able to assist
> you.
> Sincerely,
> Sharon A. Harrington
> Chief Administrator

(Am. Compl. Ex. A.)[4]

Defendant Harrington has not threatened to revoke the CDLs of Plaintiff and the proposed New Jersey class based on any alleged tickets, accidents, alleged misconduct, inability or ineptitude on the part of any driver.  (Id. ¶ 93.)  Defendant Harrington has made no allegations regarding the conduct or driving ability of any driver to justify revoking their CDLs. (Id. ¶ 94.)

According to Plaintiff, none of the New Jersey proposed class members received notice that they are entitled to a hearing regarding the revocation of the CDL either before or after revocation of that license.  (Id. ¶¶ 83-85.)  The notice provided does not specifically allege what was improper about the Swift CDL testing.  (Id. ¶ 86.)  Plaintiff further alleges that neither

---

[4] Defendant Harrington's letter is attached to Plaintiff's Amended Complaint and therefore properly considered in a motion to dismiss.  See Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

Plaintiff nor the proposed New Jersey class have been given an opportunity for any type of pre-revocation hearing.  (Id. ¶ 116.) No proposed class member has received a hearing on the validity of his or her CDL tests administered by Swift.  (Id. ¶ 66.)

Plaintiff and the proposed New Jersey class allege that Defendant Harrington's actions have caused them "serious hardship."  (Id. ¶¶ 102-03.)  Without a CDL they cannot work. (Id. ¶ 103.)  Yet many cannot comply with the requirements of the Harrington notice, because they are unable to provide their own truck, or are unable to appear for testing within the time-frame set forth in the notice.  (Id. ¶¶ 104-13)

**B.   New Jersey Motor Vehicle Commission Administrative Review Procedures**

The Motor Vehicle Commission provides for a pre-deprivation review and hearing before revocation of a driver's license, and that opportunity was available to Plaintiff herein.  As prescribed by the New Jersey Administrative Code, any licensee who faces revocation of their driver's license by the Commission may seek administrative review of that decision.[5]  N.J. Admin.

---

[5] Plaintiff's counsel, in his opposition (Pl. Opp'n at 32), in a proposed sur-reply (Pl. Sur-Reply at 3), and then again in oral argument before this Court, represented that Plaintiff was entitled to notice of the opportunity for a hearing under N.J. Stat. Ann. § 39:12-10.  This provision, and in fact the entirety of Chapter 12 of Title 39, is inapplicable to the present case. Chapter 12 sets forth the law regulating driving schools, including the licensing requirements for those intending to engage in the business of conducting a drivers' school.  N.J. Stat. Ann. §§ 39:12-1 to -15.  Thus, Section 39:12-10 describes

Code §§ 13:19-1.1 to -1.13; see <u>Division of Motor Vehicles v.</u>
<u>Granzie</u>, 565 A.2d 404, 406 (N.J. Super. Ct. App. Div. 1989) ("It
is, of course, also clear that a person aggrieved by the
[Commission's] action is entitled to a contested-case hearing
conducted by the Office of Administrative Law (OAL).") (citing
N.J. Admin. Code §§ 13:19-1.1 to -1.13).  Section 13:19-1.2(a),
applicable to cases involving revocation of a driver's license,
<u>id.</u> § 13:19-1.1, provides:

> The proposed action to be taken against any
> licensee by the Commission shall become effective
> on the date set forth in the notice except when
> otherwise specified, unless the licensee or his or
> her attorney shall make a request, in writing, for
> a hearing within 25 days from the date of notice.

The written request must set forth "all disputed material facts"
or "all legal issues" and "shall present all arguments on those
issues which the licensee wishes the Commission to consider."
<u>Id.</u> § 13:19-1.2(d).

Once requested, the Commission may take the following steps.
If the hearing request does not "set forth any disputed material
fact and fails to set forth any legal issue or any argument on an
issue" the Commission will deny the request for a hearing.  <u>Id.</u> §

---

the protections available to driving schools faced with
revocation or refusal of a license to operate a driving school.
<u>Id.</u>  The Court will give counsel the benefit of the doubt and
assume that his repeated misuse of this irrelevant provision was
mere oversight, and not intended to mislead the Court.  The Court
nevertheless takes this opportunity to emphasize an attorney's
duty under Rule 11(b), Fed. R. Civ. P., to engage in a reasonable
inquiry before making any representations to the Court.

13:19-1.2(e).  If, however, the licensee submits an appropriate
written request for a hearing, the Commission will provide
further review.  Id. §§ 13:19-1.2(f) and -1.2(g).  "When a
hearing request sets forth disputed material facts" the
Commissioner shall arrange for "a prehearing conference[6]
conducted by designated employees of the Commission."  Id. §
13:19-1.2(f).  When there are no disputed material facts, but
legal arguments are raised, the Commission may either consider
those legal arguments and render a final written determination
based on the record, require the licensee to attend a prehearing
conference, or may transmit the matter directly to the Office of
Administrative Law for a hearing pursuant to N.J. Admin. Code §
1:1.  Id. § 13:19-1.2(g).  "No hearing shall be provided when the
action taken by the Commission is required by any law which
prescribes a suspension or revocation of a license or a privilege
and which requires no exercise of discretion on the part of the
Motor Vehicle Commission."  Id. § 13:19-1.13(c).  Generally,

---

[6]
> The purpose of the prehearing conference is to
> clarify disputed material facts and legal issues
> raised in the hearing request; to review the
> evidence upon which the licensee bases his or her
> claim; to ascertain the discovery needs of the
> licensee; to supply the licensee with any discovery
> to which the licensee may be entitled under the
> Uniform Administrative Procedure Rules; and to
> attempt to resolve the administrative action to be
> taken.

N.J. Admin. Code § 13:19-1.8(a).

however, "[t]he Commission shall not take administrative action against a person unless it has first afforded an opportunity to be heard . . . ."  Id. § 13:19-1.13(a).  All final agency decisions may be appealed to the New Jersey Superior Court Appellate Division within 45 days of such decision.  N.J. Ct. R. 2:2-3(a)(2), 2:4-1(b).

### C.   Procedural History

On April 23, 2009, Plaintiff filed his initial Complaint with this Court [Docket Item 1] and submitted his Amended Complaint on June 16, 2009 [Docket Item 10].  On May 27, 2009, Plaintiff moved for a preliminary injunction against Defendant Harrington [Docket Item 3].[7]  On June 19, 2009, Defendant Harrington filed the instant motion to dismiss, consistent with this Court's scheduling order.  On July 13, 2009, the Court heard oral argument on Defendant Harrington's motion to dismiss only and reserved decision.

## III. DISCUSSION

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant Harrington styles her motion, at least in part, as one to dismiss for lack of subject matter jurisdiction pursuant

---

[7] The Court, having granted Defendant Harrington's motion to dismiss, will therefore dismiss Plaintiff's motion for a preliminary injunction as moot.

11

to Rule 12(b)(1).[8]  In essence, however, Defendant Harrington argues that Plaintiff has failed to state a federal claim for which relief can be granted -- an argument more properly raised on a motion to dismiss pursuant to Rule 12(b)(6).[9]  It is well-established that "legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court."  Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1280-81 (3d Cir. 1993) (citing Bell v. Hood, 327 U.S. 678 (1946) and Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir. 1987)).  "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  Kulick, 816 F.2d at 899 (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)).

In the present case, the Court finds that Plaintiff's

---

[8] Defendant Harrington also argues, in the alternative, that Plaintiff cannot establish jurisdiction as a class action pursuant to 28 U.S.C. § 1332(d)(2).  Plaintiff, however, does not assert jurisdiction over his claim against Defendant Harrington pursuant to 28 U.S.C. § 1332(d)(2) and so the Court will not address this argument.

[9] Likewise, Plaintiff has addressed both aspects of Defendant's motion -- lack of jurisdiction and failure to state a claim -- and the Court will treat Defendant's motion as seeking dismissal for lack of subject matter jurisdiction and, in the alternative, for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

Fourteenth Amendment due process claim pursuant to 42 U.S.C. §
1983 is neither so insubstantial and implausible, nor completely
devoid of merit, as to not involve a federal controversy.
Plaintiff has alleged that he and the proposed class were
deprived of a well-established property interest without
sufficient notice or the opportunity to be heard.  Such
allegations, laid out in detail and supported by plausible
arguments under some prior case law, are sufficient to raise a
federal controversy over which this Court may exercise
jurisdiction.  The Court finds this dispute arises under the
Constitution of the United States and that federal question
jurisdiction is present under 28 U.S.C. § 1331.

**B.   Motion to Dismiss for Failure to State a Claim**

As previously discussed, though presented as a motion to
dismiss pursuant to Rule 12(b)(1), Defendant Harrington's
arguments largely turn on the merits of Plaintiff's claim and are
more properly resolved on a Rule 12(b)(6) motion.  Though the
Third Circuit has cautioned against treating a Rule 12(b)(1)
motion as one under Rule 12(b)(6), such action is appropriate
where, as here, Plaintiff also treats the motion as one for
dismissal under Rule 12(b)(6).  Kehr Packages, Inc. v. Fidelcor,
Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) (finding "no reason not
to treat the [Rule 12(b)(1)] motion as having been made under
Rule 12(b)(6)" where plaintiff treated it as such).  The Court

13

will, consequently, address all of Defendant Harrington's arguments on the merits as if they had been presented pursuant to Rule 12(b)(6).[10]

　　　1.　Standard of Review

In its review of Defendant Harrington's motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "In

---

[10] Defendant Harrington does present her Eleventh Amendment arguments under Rule 12(b)(6). Interestingly, this argument might properly be brought as one for lack of subject matter jurisdiction. Nevertheless, because "the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction," Lombardo v. Pennsylvania Dep't of Public Welfare, 540 F.3d 190, 197 n.6 (3d Cir. 2008), the Court will consider the argument as raised -- namely, whether the Eleventh Amendment requires dismissal for failure to state a claim for which relief may be granted.

deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted). Although both parties have also submitted factual materials, the Court considers, in this Rule 12(b)(6) motion, only such documents as are attached to the complaint, are matters of public record, or form the basis of Plaintiff's due process claim.

    2.  <u>Eleventh Amendment</u>

Defendant Harrington argues that Plaintiff's claims are barred by the Eleventh Amendment under <u>Pennhurst State Sch. & Hosp. v. Halerman</u>, 465 U.S. 89 (1983), because he asks this Court to instruct Harrington, a state official, how to conform her conduct to state law.  She further suggests that the Eleventh Amendment prohibits this suit because Plaintiff is seeking retroactive relief.  Because the Court concludes that Plaintiff is seeking only to enforce federal law and is not pursuing retroactive relief, the Court finds that the Eleventh Amendment does not prevent Plaintiff's suit.[11]

---

[11] A separate question, raised by Defendant Harrington in a footnote and briefly addressed by Plaintiff in opposition, is whether Plaintiff has properly brought suit against Defendant Harrington in her personal capacity.  While it is true, as Plaintiff argues, that the Eleventh Amendment does not prohibit a suit under Section 1983 against a state official in her personal capacity for damages, <u>Hafer v. Melo</u>, 502 U.S. 21 (1991),

It is by now clear that the Eleventh Amendment permits suit against state officials for injunctive and declaratory relief to prevent ongoing or threatened violations of federal law. <u>Ex parte Young</u>, 209 U.S. 123 (1908); <u>Koslow v. Commonwealth of Pennsylvania</u>, 302 F.3d 161, 178-79 (3d Cir. 2002).  By contrast, "the Eleventh Amendment prohibits a federal court from considering a claim that a state official violated state law in carrying out his or her official responsibilities." <u>Pennsylvania Fed'n of Sportsman's Clubs, Inc. v. Hess</u>, 297 F.3d 310, 325 (3d Cir. 2002) (citing <u>Pennhurst</u>, 465 U.S. 89).  Nor may a federal court award purely retroactive relief against a state official, even where federal law is implicated. <u>Edelman v. Jordan</u>, 415 U.S. 651, 667-68 (1974); <u>see also</u> <u>Green v. Mansour</u>, 474 U.S. 64, 73-74 (1985).

In the present case, despite Harrington's protestations, Plaintiff is not seeking to enforce state law.  Plaintiff's claim

---

Plaintiff does not seek monetary relief from Harrington, but instead injunctive relief.  The question is not whether the Eleventh Amendment is prohibitive, but whether a personal capacity suit brought against a state official may seek injunctive relief involving that state officer's official role.  Here the alleged constitutional deprivation Plaintiff seeks to remedy was perpetrated by State employees and can only be remedied by State employees, not by the individual Sharon Harrington alone.  The Court concludes, consistent with other courts to have considered this issue, that the proper vehicle for seeking equitable relief against a government official involving that officer's official duties is an official capacity suit. <u>Frank v. Relin</u>, 1 F.3d 1317, 1327 (2d Cir. 1993); <u>Feit v. Ward</u>, 886 F.2d 848, 858 (7th Cir. 1989); <u>Hatfill v. Gonzales</u>, 519 F. Supp. 2d 13 (D.D.C. 2007).

rests solely on Defendant Harrington's alleged violation of his due process rights provided under the Fourteenth Amendment.  He does not argue that Harrington's conduct was arbitrary and capricious under state law.  Nor does his claim morph into one under state law merely because it involves questions regarding the state administrative and statutory procedures in place to protect drivers threatened with revocation of their licenses. See Barnes v. Cohen, 749 F.2d 1009, 1019-20 (3d Cir. 1984) (federal claim arising from state official's failure to comply with state regulations is not barred by Pennhurst).  As the Third Circuit has explained:

> Pennhurst [] did not address the Eleventh Amendment's bar of suits against state officials in federal court when the claims are based on deprivation of federal constitutional or statutory rights. Allegheny County, [732 F.2d 1167, 1174 (3d Cir. 1984)] (citing Pennhurst [], 465 U.S. at 104 n. 13 []). The fact that the federal due process right hinges upon a property or liberty interest created in part by a state regulation or policy statement does not make the cause of action any less federal in nature. See Hafer v. Melo, 502 U.S. 21, [31] (1991) (Eleventh Amendment does not bar federal section 1983 action against state officials in their individual capacity for conduct undertaken as part of their state jobs and duties).

Piecknick v. Commonwealth of Pa., 36 F.3d 1250, 1255 n.7 (3d Cir. 1994).  Plaintiff asks the Court to enforce our federal constitution and so Pennhurst is inapplicable.  See id.

Similarly, Plaintiff does not seek retroactive relief, but instead seeks equitable relief to prevent both threatened and

ongoing conduct that purportedly violates the Constitution.
Plaintiff's Amended Complaint seeks only to enjoin "the
threatened revocation of [Plaintiff's and class members'] New
Jersey CDLs." (Am. Compl. ¶ 138.)  Defendant Harrington responds
that, at least in Plaintiff's case, Plaintiff's CDL has already
been revoked, and so any equitable relief would be "retroactive."
Reinstatement, however, is not retroactive relief, but "is the
type of injunctive, 'forward-looking' relief cognizable under Ex
parte Young." Koslow, 302 F.3d at 179 (find that plaintiff's
request to have his employment reinstated by state officials was
permissible relief under the Eleventh Amendment); Melo v. Hafer,
912 F.2d 628, 635-36 (3d Cir. 1990) (plaintiff's request for
reinstatement was prospective relief and not barred by the
Eleventh Amendment), aff'd by 502 U.S. 21 (1991).  As the Seventh
Circuit explained in Elliot v. Hinds, 786 F.2d 289 (7th Cir.
1986), when considering appropriate relief for a plaintiff
wrongfully discharged in violation of his First Amendment right
to free speech:

> The injunctive relief requested here, reinstatement
> and expungement of personnel records, is clearly
> prospective in effect and thus falls outside the
> prohibitions of the Eleventh Amendment. The goal of
> reinstatement and the removal of damaging
> information from the plaintiffs work record is not
> compensatory; rather, it is to compel the state
> official to cease her actions in violation of
> federal law and to comply with constitutional
> requirements. Elliott's alleged wrongful discharge
> is a continuing violation; as long as the state
> official keeps him out of his allegedly tenured

18

position the official acts in what is claimed to be derogation of Elliott's constitutional rights. "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." Green v. Mansour, 474 U.S. 64 [] (1985).

Id. at 302.

The Court finds the established case law regarding reinstatement of employment is equally applicable to reinstatement of a driver's license.  Should this Court find that Defendant Harrington deprived Plaintiff and proposed class members of due process when revoking their CDLs, their continued deprivation is a continuing violation and reinstatement of those licenses is appropriate prospective relief, not barred by the Eleventh Amendment.  See Koslow, 302 F.3d at 179;  Melo, 912 F.2d at 635-36; Elliot, 786 F.2d at 302; Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985).

> 3.   Deprivation of Due Process

The Court now turns to the heart of Defendant Harrington's argument.  Defendant Harrington maintains that Plaintiff and the proposed class cannot state a claim for due process deprivation because they have no right to a driver's license, and that even if there was such a right, Plaintiff was provided sufficient process, and even if that process was not sufficient, New Jersey law provides for the process Plaintiff has requested.  Plaintiff responds that the proposed class has a property interest in their CDLs once issued, that the opportunity to apply for a new CDL

does not eliminate their right to due process before their licenses were revoked, and that the existence of potentially sufficient state remedies does not cure a due process violation where the drivers were not given notice of those remedies.  For the reasons explained below, the Court will grant Defendant Harrington's motion to dismiss.

While it may be true that there is no right to receive a driver's license, it is clear that once a license is bestowed, a person has a real property interest in the license that cannot be taken away without due process.[12]  <u>Mackey v. Montrym</u>, 443 U.S. 1, 11 (1979); <u>Dixon v. Love</u>, 431 U.S. 105, 112 (1977); <u>Bell v. Burson</u>, 402 U.S. 535, 539 (1971).  In <u>Bell v. Burson</u>, the Supreme Court held:

---

[12] The cases Defendant Harrington cites for the proposition that the mere opportunity to retest is sufficient and obviates the need for any further due process (notice and a hearing) are inapposite.  Both <u>Jones v. Bd. of Com'rs of Alabama State Bar</u>, 737 F.2d 996 (11th Cir. 1984) and <u>Lucero v. Ogden</u>, 718 F.2d 355 (10th Cir. 1983) involve applicants to the legal bar who were denied admission after failing the admissions test.  The <u>Bell</u> decision provides due process rights "[o]nce licenses are issued" -- thus the revocation of a license once granted implicates a real property interest, while the application for the privilege of a license may be an act of less significant constitutional dimensions.  <u>See</u> 402 U.S. at 539.
    Nor does Plaintiff's decision to downgrade to a regular driver's license automatically eliminate due process concerns, because Plaintiff has raised a factual question regarding the voluntariness of that decision, one that cannot be resolved on a motion to dismiss; so this Court must assume for the purposes of this motion that Plaintiff's decision to downgrade was not voluntary.

> Once licenses are issued . . . their continued
> possession may become essential in the pursuit of a
> livelihood. Suspension of issued licenses thus
> involves state action that adjudicates important
> interests of the licensees. In such cases the
> licenses are not to be taken away without that
> procedural due process required by the Fourteenth
> Amendment.

Id. at 539.

> The question becomes: what process is due?

> The minimum requirements of due process are notice
> and an opportunity for a hearing appropriate to the
> nature of the case. Goss v. Lopez, 419 U.S. 565 []
> (1975). The purpose of notice under the due
> process clause is to apprise an affected individual
> of, and permit adequate preparation for, an
> impending hearing which may affect their legally
> protected interests. Memphis Light, Gas and Water
> Div. v. Craft, 436 U.S. 1, 13 [] (1978).

> The most important requirement of due process is
> the opportunity to be heard at a meaningful time
> and in a meaningful manner. Kahn v. United States,
> 753 F.2d 1208, 1218 (3d Cir. 1984). Beyond this
> the exact procedural protections guaranteed by due
> process vary according to the specific factual
> context presented. Hannah v. Larche, 363 U.S. 420,
> 442 [] (1960). The concept is flexible, calling
> for procedural protection as dictated by particular
> circumstances. Kahn v. United States, 753 F.2d at
> 1218.

United States v. Raffoul, 826 F.2d 218, 222 (3d Cir. 1987).

Plaintiff maintains that he was given both insufficient

notice and no opportunity to be heard. The circumstances of this

case are unusual, however, for New Jersey law has established a

process for pre-deprivation review[13] described supra, Part II.B,

---

[13] There are three listed exceptions to the general
requirement for pre-deprivation review. N.J. Admin. Code §

but Plaintiff and the proposed class members have not alleged
that they sought review through this procedure and were denied.
Nor do they challenge these procedures as inadequate.  Instead,
Plaintiff maintains that Defendant Harrington was obligated to
provide notice not only of her intention to revoke Plaintiff's
CDL, but also of the remedies available to him under State law.
It is here that Plaintiff's argument fails, for Defendant
Harrington was not required to inform Plaintiff of State law
remedies where those remedies are documented and publicly
available for review.  City of West Covina v. Perkins, 525 U.S.
234, 241 (1999); Reams v. Irvin, 561 F.3d 1258, 1264-65 (11th
Cir. 2009); Brody v. Village of Port Chester, 434 F.3d 121, 132
(2d Cir. 2005).

     Contrary to Plaintiff's arguments, statutory notice is
sufficient to satisfy the notice requirements of due process.  In
City of West Covina, the Supreme Court held that due process does
not require individualized notice of publicly available state-law
remedies.  525 U.S. at 241.  The Supreme Court explained that

---

13:19-1.13.  One, involving moving violations, is clearly
inapplicable here.  Id. § 13:19-1.13(d).  A second involves
action required by law and involving no discretion on the part of
the Commission and a third exception broadly governs action
"wherein the Commission has authority to act without first
providing an opportunity to be heard," so long as prompt review
is available afterward.  Id. §§ 13:19-1.13(b) and -1.13(c).
Because Plaintiff did not seek review and has not been denied
pre-deprivation review on any of the above grounds, that issue is
not before the Court.

22

while individualized notice may be required to inform a citizen
that they will be deprived of a property interest,

> [n]o similar rationale justifies requiring
> individualized notice of state-law remedies which,
> like those at issue here, are established by
> published, generally available state statutes and
> case law. Once the property owner is informed that
> his property has been seized, he can turn to these
> public sources to learn about the remedial
> procedures available to him. The [government] need
> not take other steps to inform him of his options.

City of West Covina, 525 U.S. at 241. The Supreme Court went on
to distinguish Memphis Light, a case Plaintiff relies on
heavily,[14] which required a utility company to inform customers
not only that services would be cut off, but also to provide
information about the internal process for reviewing that
decision in order to satisfy due process. City of West Covina,
525 U.S. at 241-42 (citing Memphis Light, 436 U.S. at 13-15).
The City of West Covina court explained that Memphis Light
"relied not on any general principle that the government must
provide notice of the procedures for protecting one's property
interest but on the fact that the administrative procedures at
issue were not described in any publicly available document."
City of West Covina, 525 U.S. at 242. Where the administrative
review procedures are described in a publicly available document,

---

[14] Another case on which Plaintiff relies is Wilson v.
Health & Hosp. Corp. Of Marion City, 620 F.2d 1201, 1215 (7th
Cir. 1980), which rejected the statutory notice principle that
City of Covina subsequently affirmed. Wilson is thus no longer
good law.

due process does not require the government to provide notice of those procedures along with notice of the intended deprivation. City of West Covina, at 241-42; Reams, 561 F.3d at 1264-65 (plaintiff whose horse was seized by state department of agriculture was not entitled to notice of right to challenge the impoundment provided in state statute); Brody, 434 F.3d at 132 (plaintiff faced with condemnation of property to allow for city development was not entitled to notice of published procedures available for challenging condemnation).  Therefore, where the Commission's administrative review procedures were publicly available through the New Jersey Administrative Code, Defendant Harrington was not required to provide Plaintiff notice of those procedures when she notified him that he risked revocation of his CDL.[15]  See City of West Covina, 525 U.S. at 240-42;  Reams, 561

---

[15] The Court is not unsympathetic to Plaintiff's predicament and recognizes what might be viewed as a questionable assumption underlying the City of West Covina decision -- that a lay person could readily learn of the statutory and administrative remedies available when a property interest is threatened.  The Court is certainly willing to believe that at the time Plaintiff, a commercial truck driver, first received the form notice from Defendant Harrington he did not actually know of the New Jersey Motor Vehicle Commission's extensive administrative review process and that Defendant Harrington could have easily provided the requested notice of available remedies by adding a few sentences to the notification letter.  Nevertheless, the law is clear and this Court is bound to follow it.  Plaintiff's perhaps understandable ignorance does not alter the constitutional requirements placed on the State.
  Moreover, the Court observes that Plaintiff at some point hired his present counsel, and that he had legal representation within 25 days (and consequently within the 45-day period for obtaining Appellate Division review of a final agency decision

F.3d at 1264-65; Brody, 434 F.3d at 132.

Nor did Defendant Harrington's notice deprive Plaintiff or the proposed class of due process because of lack of sufficient detail regarding the basis for the threatened revocation.  The form notice informed Plaintiff that he could not continue to hold a New Jersey CDL because his initial CDL test was faulty.  The notice further explained that the test was faulty because, according to the Tennessee Department of Safety, the "third party testing company did not administer the tests in accordance with Federal Regulations and standards set by the State of Tennessee" for the period between May, 2005 and January, 2008.  (Am. Compl. Ex. A.)  Plaintiff further alleges that Defendant Harrington does not have any more information beyond what was provided in the above letter.  (Am. Compl. ¶ 76.)  This information was adequate to allow Plaintiff to demonstrate any error that might exist -- namely, that the CDL test was properly administered or that, despite the faults, Plaintiff should be permitted to retain his CDL without taking a new test.  See Cohen v. City of Philadelphia, 736 F.2d 81, 84 (3d Cir. 1984) ("The right to a hearing is certainly of little value without prior notice of the

---

under N.J. Ct. R. 2:2-3(a)(2), 2:4-1(b), supra) following his scheduled re-test date.  His attorney with a minimal amount of research could have found the relevant Administrative Code and New Jersey Court Rule provisions and sought an administrative hearing or appeal of the final decision.  It appears that this did not happen.

charges presented, in sufficient detail fairly to enable the party charged to demonstrate any error that might exist."), abrogated on other grounds by Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).  Defendant Harrington's notice provided enough detail to pass constitutional muster.[16]

Finally, Plaintiff cannot state a claim for deprivation of due process on the grounds that he was deprived a pre-deprivation hearing,[17] because he did not request a hearing through the administrative procedure made available to him.[18]  See In re

---

[16] The Court takes no position, of course, on Plaintiff's prospects of success in an administrative hearing, including whether the Commission would be in a position to present sufficient evidence to sustain revocation based upon the Tennessee developments involving Swift.

[17] The Court notes that Plaintiff may not necessarily be entitled to a pre-deprivation hearing.  In Mackey v. Montrym, 443 U.S. 1 (1979) and Dixon v. Love, 431 U.S. 105 (1977), the Supreme Court upheld post-revocation hearings where state statutory schemes required automatic suspension based on the driver's conduct.  In both cases, the Supreme Court noted the flexible requirements of due process and applied the three-factor test set out in Mathews v. Eldridge, 424 U.S. 319 (1976) (a case decided after Bell), ultimately concluding that the government's interest in public safety outweighed any small risk of error and the interests of the deprived driver to allow for only post-deprivation hearings.  Mackey, 443 U.S. at 10-19; Dixon, 431 U.S. at 112-15.  It is possible that Plaintiff would be able to distinguish these two cases, for he argues that Defendant Harrington's decision is not based on any real concerns for public safety (none of the drivers appear to have been accused of poor driving or other driving misconduct), but because Plaintiff did not take his opportunity to request a pre-deprivation hearing, and therefore has not been denied a pre-deprivation hearing, that issue cannot be decided here.

[18] The parties present a factual dispute regarding what information, if any, Plaintiff should have or did receive when he

26

Surrick, 338 F.3d 224, 236 (3d Cir. 2004); Waste Conversion, Inc. v. Sims, 868 F. Supp. 643, 655 (D.N.J. 1994).  Plaintiff cannot show that he was deprived of due process, where remedies were made available to him and he did not pursue them.  See In re Surrick, 338 F.3d at 236 (holding that where attorney never requested a second evidentiary hearing during disciplinary proceedings, he could not bring claim for deprivation of due process for denial of a second hearing); Waste Conversion, 868 F. Supp. at 655 (noting "the general rule that failure to invoke the right to a hearing waives that right"); see also United States v. Olano, 507 U.S. 725, 731 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'") (quoting Yakus v. United States, 321 U.S. 414, 444 (1944)).

Having failed to state a claim of insufficient process, either through inadequate notice or deprivation of a meaningful opportunity to be heard, Plaintiff's claim against Defendant Harrington will be dismissed without prejudice to Plaintiff pursuing any available State remedies.

---

called the phone number listed on the form notice.  Such disputes are irrelevant because there is no suggestion that Plaintiff sought a hearing or requested information about a possible hearing during this phone call.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that it has subject matter jurisdiction over Plaintiff's federal due process claim, and that the Eleventh Amendment does not bar this suit, but will grant Defendant Harrington's motion to dismiss because Plaintiff received sufficient notice of the intended deprivation and was not deprived of a hearing because he did not request a hearing, as provided for under New Jersey law.  The accompanying Order will be entered.


**July 14, 2009**                                      **s/ Jerome B. Simandle**
Date                                                                   JEROME B. SIMANDLE
                                                                          United States District Judge

28